WILLING, RECEIVER, *v.* BINENSTOCK ET AL.

No. 36.   Argued November 17, 1937.—Decided December 6, 1937.

*Messrs. James M. Kane* and *George P. Barse,* with whom *Mr. Thomas J. Minnick, Jr.* was on the brief, for petitioner.

*Mr. Robert T. McCracken,* with whom *Mr. C. Russell Phillips* was on the brief, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit brought by respondents in a federal district court in Pennsylvania seeking to have allowed as a set-off against the indebtedness of the partnership firm

of Swinger and Binenstock to the Commercial National Bank the amount of a deposit in the bank by Swinger, now deceased, and so much of a deposit by Binenstock as might be necessary to cancel the indebtedness. The bank was organized under the National Banking Act of the United States, and as such was engaged in business in Pennsylvania. On January 9, 1933, the partnership executed and delivered its promissory note to the bank in the sum of $10,000; and on February 28, 1933, executed and delivered to the bank its further promissory note in the same amount. Under date of January 25, 1933, one Luciano Cammarota executed and delivered to the partnership his promissory note for $300, which note was endorsed and discounted at the bank.

At the close of business on February 28, Swinger had on deposit in the bank the sum of $1,546.58, and Binenstock the sum of $32,323.76. At the same time, the partnership had on deposit the sum of $5,822.52. On that date the bank became insolvent and was taken over by the Comptroller of Currency, who appointed petitioner, Willing, receiver. Petitioner, when the suit was brought, had reduced the indebtedness of the partnership by allowing a set-off of the amount of the partnership deposit, but had failed and refused to allow as a set-off the amounts here in controversy.

Upon these facts the district court sustained the claim of respondents, 18 F. Supp. 262, and entered a decree allowing the set-off of the individual deposits against the joint indebtedness of the partnership, ordering a cancellation and return of the partnership promissory notes, and allowing a claim of Binenstock against the assets of the bank for the amount of his deposit, after making provision for the set-off. The decree also directed petitioner to endorse, without recourse, and deliver to Binenstock, the note of Cammarota for $300. Upon appeal, the court below affirmed. 88 F. (2d) 474. The decrees in both

courts were based upon what was understood and declared by them to be the Pennsylvania rule upon the subject.

The case has been elaborately argued upon both sides; but, in respect of the partnership notes, we find it unnecessary to do more than consider and determine the question whether the courts below correctly stated the Pennsylvania law on the subject and were right in following it as the controlling rule of decision.

*First.* In *Miller* v. *Reed*, 27 Pa. 244, the Supreme Court of Pennsylvania held that, whatever distinctions otherwise would exist between joint contracts and contracts joint and several, these distinctions, under the statutes of the state, had been obliterated. These statutes, it was said (p. 249), "have taken away distinctions that were always embarrassing, and sometimes insuperable obstacles to the course of justice. There was no difference in the duty before, and none in the remedy now. The moral obligation is not affected by the words joint and several, and in Pennsylvania at least, the legal liability is not." It, therefore, makes no difference here whether the Swinger and Binenstock notes were joint, or joint and several.

In the opinion of the federal district court in this case, Judge Kirkpatrick said: "The law of the state of Pennsylvania, if applicable, would clearly sustain the bill. The decisions of that state allow individual claims to be set off in equity against a joint liability even though the party asserting the joint liability is solvent. Stewart v. Coulter, 12 Serg. & R. (Pa.) 252; Cochran v. Cutter, 18 Pa. Super. 282. See also Mintz v. Tri-County Natural Gas Company, 259 Pa. 477." He held the law applicable and entered the decree accordingly. The court below affirmed on the authority of the opinion of the district judge.

Petitioner challenges this view of the district judge, albeit faintly. The judges of both courts below have had

wide experience in the field of Pennsylvania law; and, even if the question were doubtful, as we think it is not, we should have little hesitation in accepting their determination as to the state law on the point here under consideration. We have, however, examined the decisions of the Pennsylvania courts, and fully agree with the courts below as to their interpretation.

*Second.* We have no occasion to consider whether § 721 of the Revised Statutes (28 U. S. C. § 725) is applicable.* Under *Swift* v. *Tyson,* 16 Pet. 1, it would not be. That case has been much criticized, and the tendency of our decisions which have followed has been to limit it somewhat strictly. And one of the practical restrictions upon the principle of that case, which we have many times announced, is that, even where it applies, "for the sake of harmony and to avoid confusion, the Federal courts will lean towards an agreement of views with the State courts if the question seems to them balanced with doubt." *Burgess* v. *Seligman,* 107 U. S. 20, 33–34; *Sim* v. *Edenborn,* 242 U. S. 131, 135, and authorities cited; *Trainor Co.* v. *Aetna Casualty & Surety Co.,* 290 U. S. 47, 54–55; *Mutual Life Ins. Co.* v. *Johnson,* 293 U. S. 335, 340; *Community Bldg. Co.* v. *Maryland Casualty Co.,* 8 F. (2d) 678, 680. Even if there were a conflict between the decisions of the state and those of the lower federal courts, we should be free to apply the "harmony" rule and follow the state decisions. We are, however, unable to find any such conflict.

The case which seems most nearly in point is *Roelker* v. *Bromley-Shepard Co.,* 73 F. (2d) 618; and that case, so far as it goes, is in harmony with the Pennsylvania rule. There, the company was indebted to the Middle-

---

*Sec. 721. "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

sex National Bank in the sum of $5,000 on a joint note signed by the company and Sarah Bromley Shepard. On the day the bank closed, the company had on deposit in the bank $5,611.10 and Sarah Bromley Shepard had on deposit the sum of $6,275.13. The court ordered that $5,000 of the $5,611.10 due from the bank to the company be set off against the $5,000 due from the company to the bank on the joint note, holding that where justice requires and there is no adequate remedy at law, as was the case there, a court of equity will order a set-off.

There is nothing in the National Banking Act or in any other federal statute which conflicts with the Pennsylvania rule. In the case of an insolvent bank, the National Banking Act, 12 U. S. C. § 194, simply provides for a "ratable dividend" on all proved or adjudicated claims. This court held in *Scott* v. *Armstrong*, 146 U. S. 499, 510, that the allowance of a valid set-off cannot be considered a preference, and that only the balance, after deduction of the set-off, constitutes part of the assets of the insolvent. "The requirement," the court said, "as to ratable dividends, is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

*Third.* The reason for the order of the district court requiring the surrender of the Cammarota note for $300 is not clear, but the requirement seems to be erroneous. It does not appear from the record whether Cammarota was solvent or insolvent. If he was solvent, the partnership was not entitled to set off its deposits against its secondary liability as endorser of the Cammarota note. See *Williams* v. *Rose,* 218 Fed. 898, 900; *Bank of United States* v. *Braverman,* 259 N. Y. 65, 68, *et seq.;* 181 N. E. 50, and authorities cited. "To allow an indorser," the

New York court said, 259 N. Y., pp. 70–71, "to set off his deposit when the maker is solvent and able to indemnify the indorser as in this case would enable the indorser to collect the full amount unpaid on the note from the maker and at the same time receive a larger amount of his deposit than other depositors. Such a result would be inequitable." An excellent statement in support of the foregoing view, and the reasons for it, will be found in the opinion delivered by Judge Parker in *Shannon* v. *Sutherland,* 74 F. (2d) 530, 531–532.

The facts are not sufficiently disclosed by the record to enable us to dispose of this item. The opinion of neither court deals with the subject, and respondents, neither in their brief nor oral argument, have had anything to say about it. In these circumstances, the case must be remanded to the district court for further consideration of the question, with authority, in its discretion, to take further evidence to that end. With that exception, the decree below is approved.

Reversed and remanded for further proceedings in conformity with this opinion.

*Reversed.*