JAMES A. CONNELLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5153, 6006.   Promulgated April 17, 1946.

*M. L. Seidman, C. P. A.*, and *S. J. Lasser, C. P. A.*, for the petitioner. *Homer F. Benson, Esq.*, for the respondent.

746

OPINION.

SMITH, *Judge*: The first question presented is whether the contributions made by the petitioner to the McKean County Fair Association in 1940 and 1941 are legal deductions from gross income under section 23 (o) of the Internal Revenue Code. That section provides in material part as follows:

(o) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of:

\* \* \* \* \* \* \*

(2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

The respondent has disallowed these deductions upon the ground that the Fair Association is not "organized and operated exclusively for religious, charitable, scientific, literary or educational purposes." No contention is made that any part of the net earnings of the Fair Association inured to the benefit of any private shareholder or individual or that any substantial part of its activities is carrying on propaganda or otherwise attempting to influence legislation. The respondent's position is that the ordinary county fair is one that is organized for the social welfare of the public; that at such fairs, ordinarily, horse racing is carried on and other activities for the

pleasure of the public, which takes the association out of the class of exempt organizations "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes." The respondent admits that the promotion of agriculture through prizes for best exhibits of live stock and other agricultural products may be broadly classified as scientific or educational, but he submits that the association can not be classified as organized and operated exclusively for scientific and educational purposes.

In *Roy C. McKenna*, 5 T. C. 712, we held that contributions to unincorporated organizations of voluntary firemen in various political subdivisions of the Commonwealth of Pennsylvania were organized for charitable purposes within the meaning of section 23 (o) (2) of the code and that they are legal deductions from gross income. We pointed out that the provisions of this section, like the provisions exempting charitable organizations from tax, should be liberally construed, "so that the result will not turn on accidental circumstances or legal difficulties," citing numerous cases. See also *Isabella M. Sheldon*, 6 T. C. 510.

We think that an incorporated fair association which has for its primary object the holding of agricultural fairs qualifies as one "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes." The Commonwealth of Pennsylvania made annual appropriations for the support of the association. Quite clearly these appropriations were made in recognition of their educational value. In our opinion the entertainment features of such fairs are of minor importance. They are only incidental to the main purpose for which the fair is held. The Supreme Court has recognized that an otherwise tax-exempt charitable organization does not lose its exemption from tax merely because it has incidental income from other sources. *Trinidad* v. *Sagrada Orden de Predicadores*, *etc.*, 263 U. S. 578. Likewise, we think that a fair association does not lose its character as one operated exclusively for scientific and educational purposes because of incidental features, such as horse racing, which are designed to increase attendance. The respondent erred in the disallowance of the claimed deductions.

The second question is whether the petitioner is entitled to deduct payments of attorneys' fees made in 1941 in contesting a deficiency in income tax determined by the Commissioner for 1934. In *Howard E. Cammack*, 5 T. C. 467, we held that payments of attorney fees by the taxpayer in 1940 in recovering an overpayment of income tax for 1932 was a legal deduction from gross income in the year in which paid. The only difference between that case and the instant proceeding is that there the taxpayer was successful in recovering the overpayment, whereas here the taxpayer was unsuccessful in contesting the

deficiency. We do not think, however, hat this is a material difference. Section 23 (a) (2) of the code, a' amended, permits the deduction from gross income:

(2) * * * In the case of an individɩ ɩl, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conseɩ ɩation, or maintenance of property held for the production of income.

The litigation expenses paid by th ɩ petitioner in 1941 were for the conservation of his property. We ɩold, upon the authority of the above cited case, that the amount of attorneys' fees paid by the petitioner in 1941 is allowable as a dɩ luction from gross income of 1941.

*Decisɩons will be entered under Rule 50.*